UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TILE WORLD CORPORATION,

        Plaintiff,

v.                                                           Case No:  6:15-cv-919-Orl-28TBS

MIAVANA & FAMILY, INC.,

        Defendant.

---

## ORDER

    Plaintiff, Tile World Corporation ("Tile World"), moves for a preliminary injunction against Miavana & Family, Inc. ("Miavana") alleging that Miavana has been selling turbinado sugar products in violation of Tile World's trademark and trade dress rights. (Mot. Prelim. Inj., Doc. 29).  I held a hearing on the motion on January 20, 2016.  (See Mins., Doc. 43).  After considering the motion, Miavana's response (Doc. 40), the evidence submitted by both sides, (Exs. 1–6 to Mot. Prelim. Inj., Docs. 29-1 to 29-8; Decls. of Angulo and Coronel, Docs. 39-1 & 39-7, and accompanying exhibits), and arguments at the hearing, as announced at the hearing I conclude that Tile World has not established entitlement to a preliminary injunction and that the motion must be denied.

### I.    Background

    Tile World and Miavana are both in the business of, among other things, purchasing and importing turbinado sugar from Colombia to package and resell inside the United States. (Mot. Prelim. Inj., Doc. 29, at 6).  Presently, both parties sell the imported sugar under the brand name "Batey" in packaging that is virtually indistinguishable. (Id.).  The packaging design at issue includes the word "Batey," a stylized illustration of a house on

stilts ("the Batey Logo"), a see-through "window" for viewing the sugar, stylized lettering, and a patterned plastic bag made to look like a burlap sack (all packaging attributes are collectively referred to as "the Trade Dress"). (Coronel Decl., Doc. 39-7, at 3). Tile World and Miavana both claim that they own the rights to the Trade Dress; that they are the owner and senior user of the Batey trademark for use in the sale of sugar; and that they have continuously sold sugar products under the Batey brand since early 2003. (Mot. Prelim. Inj. at 6; Resp. in Opp'n, Doc. 40, at 3; Angulo Decl., Doc. 39-1, at 4–5).

## A.    History of Batey Trademark

Miavana claims that its predecessor, Miavana Wholesale Co. ("MWC") began selling various food products in 1995 under the name Batey, together with the Batey Logo. (Resp. in Opp'n at 3; Coronel Decl., Doc. 39-7, at 2). The United States Patent and Trademark Office ("USPTO") issued MWC a registered trademark in 2002 for the word "Batey" for use in the sale of food products of animal origin, plant origin, and non-alcoholic beverages.[1] (Coronel Decl. at 3). The trademark registration did not include the word "Batey" for use in the sale of sugar or sweeteners.

According to Miavana, MWC made continuous use of the Batey trademark from 1995 until it sold its assets to Miavana in 2007. (Resp. in Opp'n at 2). In 2008, MWC assigned to Miavana its rights to the registered trademark "Batey." (Ex. C to Angulo Decl., Doc. 39-4, at 3). In 2009, Miavana's President submitted to the USPTO a Combined Declaration of Use and Incontestability of the Batey trademark under Sections 8 and 15 of

---

[1] According to the registration document, the trademark "Batey" is registered for use in the sale of "canned fruits, dairy products excluding ice cream, ice milk, and frozen yogurt; canned fish, coconut milk, and sausages, in class 29"; for "wine sauce, hot sauce, pastas, salt, rice, and vinegar, in class 30"; and for "drinking water and malta, namely, nonalcoholic malt beverage, in class 32." (Ex. B to Angulo Decl., Doc. 39-3).

the Lanham Act and later that year gained incontestable status for its Batey mark.  (Ex. E to Angulo Decl., Doc. 39-6, at 1; Angulo Decl. at 4).[2]  Miavana alleges that from 2003 to the present, MWC and Miavana have continuously used the Batey trademark, the Batey logo, and the Trade Dress for the sale of sugar.  (Resp. in Opp'n at 3).

### B.    History of Relationship Between the Parties

Tile World and MWC met in 2002 and established an informal agreement to sell sugar under the Batey brand name and to design the Trade Dress.  (Schneider Decl., Doc. 19-3, at 1; Coronel Decl. at 3; Ex. K to Coronel Decl., Doc. 39-18, at 4).  In 2003, Tile World began importing turbinado sugar from a sugar producing company in Colombia called Sociedad de Comercializacion de Azucares y Mieles S.A. ("Ciamsa").  (Coronel Decl. at 4).  Miavana claims that "[d]uring this time, [Tile World's] use of the [Batey] trademark and the [Batey] Logo on the [Trade Dress] was made at the direction of MWC."  (Id. at 4–5).  Tile World claims, however, that it packaged the sugar in the Trade Dress and then sold the sugar to distributors, grocery stores, and wholesalers—including MWC.  (Mot. Prelim. Inj. at 6; Nicholls Decl., Doc. 29-1, at 2).  Tile World imported and sold the sugar in the Trade Dress to MWC, and subsequently Miavana, continuously from 2003 to 2013.  (Schneider Decl. at 8).

### C.    2005 and 2006 Trademark Agreements

In 2005, Tile World, Ciamsa (the Colombian sugar producer), and MWC entered into a Trademark Authorization Agreement ("the 2005 Agreement") which, according to Tile World, sought to "formalize their business relationship."  (Mot. Prelim. Inj. at 6).  Under the

---

[2] Mr. Claudio R. Angulo, Miavana's president, filed with the USPTO for a second Declaration of Use and Application for Renewal in 2012.  (Ex. E to Angulo Decl., Doc. 39-6, at 1).

2005 Agreement, Tile World paid $30,000 to MWC in exchange for MWC granting certain rights to the Batey trademark to Ciamsa. (Ex. 5 to Mot. Prelim. Inj., Doc. 29-7, at 3). The translated[3] 2005 Agreement states in relevant part that "[MWC] expressly authorizes [Ciamsa] to use . . . the trademark to market directly or by third parties, the product "azucar",[4] identified with the brand [Batey] . . . ." (Id.). The 2005 Agreement reserves for MWC the exclusive right to sell Batey-branded sugar in the "ethnic markets of Independents in South East Florida, territory between Jupiter and Key West." (Id. at 4). In 2006, a subsequent agreement was signed wherein Ciamsa assigned to Tile World all of the rights it received under the 2005 Agreement ("the 2006 Agreement"). (Ex. 6 to Mot. Prelim. Inj., Doc. 29-8, at 3).

### D.   History of Infringement

Miavana stopped buying sugar from Tile World in 2013 and began importing and packaging its own sugar in the same Trade Dress.[5] Tile World alleges that Miavana has begun infringing its trademark and trade dress rights by distributing its products for sale in several ethnic grocery stores in Orlando, New York, and New Jersey. (Mot. Prelim. Inj. at

---

[3] The executed agreement was originally drafted in Spanish. The parties have not objected to the translation provided by Tile World contained in Exhibit 5 attached to the Motion. (Ex. 5 to Mot. Prelim. Inj., Doc. 29-7.)

[4] "Azucar" is the Spanish word for "sugar."

[5] According to Tile World, "[t]he initial packaging the defendant used when it began infringing was a poor knock-off of [Tile World's] Trade Dress, but was substantially similar in appearance." (Mot. Prelim. Inj. at 2). Tile World claims that more recently Miavana improved its quality and now sells its sugar in "a near perfect copy of the packaging, incorporating all of [Tile World's] Trade Dress and the [Batey] mark." (Id.). Tile World alleges that such an exact copy is possible because Miavana "persuaded [Tile World's] former package manufacturer to make the identical bags for them." (Schneider Decl. at 4). The only difference between the parties' packaging is the name of the importing company printed on the back of the package. (Mot. Prelim. Inj. at 15). The vice president of Tile World has "observed both [Tile World's] and [Miavana's] products on shelves in the same store at the same time, and . . . was unable to tell which product was [Tile World's] without studying [the importer information on the back of the package]." (Nicholls Decl. at 2).

2; Nicholls Decl. at 4).  These developments led Tile World to file a seven-count complaint alleging trademark and trade dress infringement under the Lanham Act, Florida common law, and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).  (Am. Compl., Doc. 8).  Because of the recent expansion of Miavana's distribution, Tile World is seeking a preliminary injunction to prohibit Miavana from selling, marketing, or offering for sale Batey-branded sugar in the Trade Dress.  In response, Miavana argues that Tile World cannot establish that it has the ownership rights to either the Batey trademark or the Trade Dress.[6]

## II.     Analysis

"[T]he four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted . . . are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "'[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to each of the four prerequisites."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)).

---

[6] Nonetheless, in accordance with the 2005 Agreement, Miavana recently stopped selling Batey-branded sugar in the Trade Dress to the Orlando distributor and has ordered its Colombia supplier to cease shipping the same to the New York and New Jersey distributor.  (Angulo Decl. at 4).

A.   **Substantial Likelihood of Success on the Merits**

Tile World brings seven claims against Miavana, but the case rises and falls on its

claims of trademark and trade dress infringement under Section 43(a) of the Lanham Act,

codified as 15 U.S.C. § 1125(a).[7]

1.   *Trademark*

To prevail on a trademark infringement claim under § 43(a) of the Lanham Act, Tile

World must show that (1) its mark is valid and thus protectable and (2) Miavana adopted

an identical or similar mark that made customers likely to confuse the two products. Miller's

Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1317 (11th Cir. 2012).

Tile World fails to establish the first element because it is not clear that its claimed mark is

valid and protectable.

Tile World bases its ownership of the Batey trademark on two theories:  (1) that it

was the prior user of the Batey mark in the sale of sugar and (2) that it acquired ownership

through the 2005 and 2006 Agreements.  (Mot. Prelim. Inj. at 9).  "[I]t is not registration,

but only actual use of a designation as a mark that creates rights and priority over others."[8]

2 McCarthy on Trademarks and Unfair Competition § 16:1 (4th ed. 2015).  Based on the

---

[7] Tile World's claims under the Lanham Act, Florida common law, and Florida statute all arise under the same trademark and trade dress infringement theories. Thus, the Lanham Act analysis for trademark and trade dress infringement applies to all of Tile World's claims. See Suntree Techs., Inc. v. EcoSense Int'l, Inc., 802 F. Supp. 2d 1273, 1279 (M.D. Fla. 2011) aff'd, 693 F.3d 1338 (11th Cir. 2012) ("The analysis for Florida common law trademark infringement is the same as under the Lanham Act."); id. ("'[T]o bring a claim under [FDUTPA], the plaintiff must have been aggrieved by the alleged unfair and deceptive act' and when that alleged act is trademark infringement, the claim 'rises or falls on the success of its trademark infringement . . . claims.'" (quoting Natural Answers, Inc. v. SmithKline Beecham Corp., 529 F.3d 1325, 1333 (11th Cir. 2008))).

[8] Even the incontestable status of Miavana's trademark can be overcome through prior use. See 15 U.S.C. § 1065 (stating that a mark is not incontestable where "the use of a mark registered . . . infringes a valid right acquired under the law of any State or Territory by use of a mark . . . continuing from a date prior to the date of registration").

evidence in the record, I cannot determine whether Tile World sold sugar under the Batey mark prior to Miavana because both parties claim they began to sell the Batey-branded sugar in January of 2003.

And even if Tile World is credited with selling sugar prior to Miavana, it is also possible that the use of the Batey mark in the sale of sugar would be included in Miavana's registered trademark under the "related use" or "natural expansion" theory. See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1023 (11th Cir. 1989); see also 4 McCarthy on Trademarks and Unfair Competition § 24:6 (4th ed. 2015) ("The exclusionary rights of a registered trademark owner are not limited to the goods and/or services specified in the registration, but go to any goods or services on which the use of the mark is likely to cause confusion.").

Alternatively, Tile World relies on the 2005 and 2006 Agreements to establish ownership of the trademark. The parties disagree about whether the 2005 Agreement was an assignment of the *ownership* of the trademark or a license to *use* it. The difference between the two is significant because "a licensee has no ownership rights in the licensed mark to assert against its licensor."[9]  3 McCarthy on Trademarks and Unfair Competition §

---

[9] This distinction also touches upon Miavana's argument in its response to the Motion for Preliminary Injunction that Tile World lacks standing as a licensee to bring a trademark infringement claim against it. The Supreme Court recently considered a similar question of whether a party "fell within the class of plaintiffs whom Congress has authorized to sue" for false advertising under Section 43(a) of the Lanham Act. Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1388 (2014). Since Lexmark, courts have held that "[s]ection 43(a) . . . affords relief to any plaintiff who shows the requisite injury from the defendant's infringing conduct, without regard to any ownership interest the plaintiff may have in the trademark." Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc., No. 6:14–cv–1551–Orl–40GJK, 2015 WL 1708757, at *5 (M.D. Fla. Apr. 15, 2015). However, neither Kroma nor Lexmark considered the question of whether a licensee has standing to sue the licensor-registered trademark owner for trademark infringement under section 43(a). As discussed in a pre-Lexmark case, "[t]his is not a case

18:44.50 n.2 (4th ed. 2015). Thus, where there is a breach of a license agreement, the proper remedy is a breach of contract claim. See id.; Silverstar Enters., Inc. v. Aday, 537 F. Supp. 236, 242 (S.D.N.Y. 1982) (stating that a dispute between an exclusive licensee and a licensor over the right to use a trademark "is essentially a contract dispute" and "should be determined by the principles of contract law, as it is the contract that defines the parties' relationship and provides mechanisms to redress alleged breaches thereto"). An assignee, on the other hand, steps into the shoes of the assignor with respect to ownership rights to the trademark, and if the assignor continues to use its formerly owned mark, the assignee has a claim for both trademark infringement and breach of contract. 3 McCarthy on Trademarks and Unfair Competition § 18:15 (4th ed. 2015).

On this record, I cannot conclude that there is a likelihood that Tile World owns the trademark. Most significantly, the 2005 Agreement does not convey all of MWC's interest in the trademark but instead reserves exclusive territory for itself in South Florida. (Ex. 5 to Mot. Prelim. Inj., at 3). "An assignment of a trademark is only valid when it includes 'all rights in that mark.'" Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 391 (S.D.N.Y. 2011) (quoting 3 McCarthy § 18:1). The 2005 Agreement further provides that Miavana's predecessor, MWC, allowed Ciamsa "*to use* the trademark," (Ex. 5 to Mot. Prelim. Inj., at 3), which is contrary to the language of an assignment conveying ownership. "[L]icenses for *particular uses*, or other documents not purporting to transfer *ownership* in the mark, are not assignments as the alleged assignor

---

of either the licensee or licensor attempting to protect a trademark from unscrupulous use in the marketplace by third parties. Rather, this case involves the alleged breach of a license agreement." Silverstar Enters., Inc. v. Aday, 537 F. Supp. 236, 242 (S.D.N.Y. 1982). I make no decision regarding whether Tile World has standing to bring a claim for trademark infringement against Miavana.

has not parted with all rights." Id. (second alteration in original).  Based on the plain language of the contract I cannot conclude that Tile World has carried its burden of demonstrating that it owns the trademark.[10]

> ### 2.    Trade Dress

Tile World also fails to establish a likelihood of success on the merits on its claim of trade dress infringement.  As discussed above, the parties disagree as to who created the Trade Dress—each providing sworn affidavits that are diametrically opposed.  For this reason, I am unable to conclude that Tile World has a substantial likelihood of success on the merits of its trade dress claim.  And, because Tile World has failed to establish that it owns either the Trade Dress or trademark at issue, it cannot establish a substantial likelihood of success on the merits of its claims.

### B.    Irreparable Injury

A plaintiff seeking a preliminary injunction must also show that it will suffer irreparable injury without injunctive relief.  Irreparable harm can sometimes be assumed in cases of trademark infringement upon a showing of likelihood of success on the merits, see McDonald's, 147 F.3d at 1310; but see N. Am. Med. Corp. v. Axiom Worldwide, Inc., 552 F.3d 1211 (11th Cir. 2008) (questioning whether a presumption may still be applied).  Here, however, Tile World has failed to make such a showing.  Moreover, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" Siegel, 234 F.3d at 1176 (quoting Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v.

---

[10] At the hearing, Tile World briefly argued that if the 2005 Agreement was indeed a trademark license, it qualifies as a "naked license" because MWC and Miavana have failed to control the quality and use of the trademark.  This argument was not raised in Tile World's motion, and there is scant development of the record regarding Miavana's alleged lack of control.

City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990)).  Tile World alleges that its irreparable harm is its loss of control of reputation and loss of goodwill.  However, such damages are premised on its ownership over the Batey trademark and Trade Dress.  Tile World has failed to show that it actually owns the Batey brand for use in the sale of sugar, and therefore any harm from loss of control of reputation is merely speculative rather than imminent.  Accordingly, Tile World has not shown that it will suffer irreparable injury without injunctive relief.

### C.    Other Factors

Because Tile World has failed to meet its burden of establishing a substantial likelihood of success on the merits or irreparable injury, Tile World cannot obtain a preliminary injunction.  I need not consider the other factors in the analysis.

### III.   Conclusion

Because Tile World has not shown that it is entitled to a preliminary injunction, its motion must be denied.  Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Plaintiff's Urgent Motion for Preliminary Injunction (Doc. 29) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on January 28, 2016.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties