UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TILE WORLD CORPORATION,

    Plaintiff,

v.                                                      Case No: 6:15-cv-919-Orl-28TBS

MIAVANA & FAMILY, INC.,

    Defendant.

## ORDER

Pending before the Court is Defendant's Motion for Limited Relief from Scheduling Order Deadlines (Doc. 61). I ordered an expedited response from Plaintiff (Doc. 65), which has now been filed (Doc. 66). The motion seeks leave to take the deposition of Roland Schneider, Plaintiff's president, well outside the expiration of the discovery period. The motion is **DENIED;** however, I **recommend** that the District Judge refer this case to a United States Magistrate Judge for the purpose of a prompt settlement conference.

### Background

*"What we've got here is failure to communicate"* [1]

The discovery deadline expired February 10, 2017, and the case is set for an 8-10 day jury trial during the September 1, 2017 trial term (Doc. 47). Despite ample time for discovery, the parties represent that little has been taken. Defendant served interrogatories and requests for the production of documents on Plaintiff in March 2016, and received responses to both. On April 1, 2016 and April 7, 2016 respectively, Defendant served document subpoenas on Rafaela Stakemann and Anthony Veltri,

---

[1] Cool Hand Luke (1967).

additional declarants in support of Plaintiff's Urgent Motion for Preliminary Injunction (Doc. 29). Defendant also subpoenaed documents from a number of Plaintiff's distributors. On November 28, 2016, the parties met in Miami for the corporate representative depositions of Defendant and of one of Plaintiff's distributors, nonparty Conchita Foods, Inc. (Doc. 61, ¶ 15). No other witnesses have been deposed (Id.).

During and after the November 28th meeting, the parties explored settlement. This is where their stories differ. Defense counsel, Gregory W. Herbert, Esq. and Plaintiff's counsel, Michael D. Crosbie, Esq., have both tendered Declarations (Docs. 66-1 and 66-1) setting forth their versions of events, complete with lengthy email chains. Mr. Herbert believes he had an understanding with Mr. Crosbie that the discovery deadlines would be extended, pending what both sides thought would be successful settlement negotiations. He declares: "By way of example, on March 14, 2017, the parties mutually agreed to extend the fact discovery deadline up to and including April 21, 2017 to permit further settlement discussion." (Doc. 61-1, ¶ 4). Mr. Herbert says the deposition of Mr. Schneider was noticed on April 11, 2017, to occur on the mutually agreed date of April 20, 2017, but:

> On April 19, 2017, the night before Mr. Schneider's scheduled deposition, settlement discussions renewed in earnest, with direct talks between the parties. Nonetheless, Defendant's counsel did not agree to postpone the deposition until the parties advised they had reached a complete settlement agreement in principle, including monetary and non-monetary terms confirmed in communications between counsel. At that point, counsel for the parties agreed to continue the deposition of Mr. Schneider and instead devote their energies to formalizing the settlement in a fully-integrated document.

(Doc. 61-1, ¶ 5). Mr. Herbert says that the parties continued their attempts to finalize their agreement, but "the parties' efforts at finalizing their settlement agreement abruptly ended on or about June 22, 2017, when Plaintiff's counsel informed Defendant's counsel that

Plaintiff refused to honor the previously agreed to non-monetary terms of the parties' settlement agreement" and "refused to honor the prior agreement to continue the deposition of Roland Schneider." (Id., ¶ 7). Thus, the deposition of Mr. Schneider was never taken.

Mr. Crosbie acknowledges that he too thought the case would settle, but disputes that he agreed to an "open ended" discovery period. Mr. Crosbie notes that both parties "elected to conduct little discovery through deposition," instead concentrating their efforts toward settlement (Doc. 66-1, ¶ 5). He admits that, "during Spring 2017," counsel for the parties agreed to extend the discovery disclosure deadline to April 21, 2017 (Id., ¶ 10), but he says, Defendant was "never precluded from deposing Mr. Schneider." (Id., ¶ 11). Mr. Crosbie advises that the parties spoke via telephone and reached a "tentative" agreement to resolve their disputes, save for one issue, on April 19, 2017, and Mr. Herbert sent Mr. Crosbie an email which reads:

> From:    Herbert, Gregory W. (Shld-Orl-LT-IP)
> Sent:    Wednesday, April 19, 2017 7:26 PM
> To:      Michael Crosbie
> Cc:      [omitted]
> Subject: Miavana/Tile World- tentative settlement/depos canceled
>
> Mike,
>
> Confirming our call just now that it appears the parties have reached a tentative settlement in their negotiations by phone today, subject to and conditioned on mutual execution of a written settlement agreement. My team will work on preparation of a draft agreement and aim to send that to you in the next few days. In the meantime you and I have agreed that the deposition of Mr. Schneider set for tomorrow and the depositions of Mr. Angulo and Mr. Coronel set for next week are hereby canceled.
> We will be in touch soon.

>    Regards,
>
>    ~Greg

(Doc. 61-6 at 1). According to Mr. Crosbie, the parties continued to discuss settlement and exchanged drafts and revisions to a settlement agreement and, during conversations with Defendant's counsel that continued through May into June, there was no mention or request by Defendant's counsel for deposition dates (Id., ¶ 15). He states that on June 13, 2017, nearly two months after the agreed extended discovery deadline, Mr. Herbert "unexpectedly" emailed him that "settlement negotiations are off," and requested deposition dates (Id., ¶ 16; Doc. 61-1 at 10). Mr. Crosbie says that a series of discussions between counsel began on June 19, 2017, and that the focus was "solely and entirely on settlement." (Doc. 66-1, ¶ 17). He reports that on or about June 22, 2017, it became apparent that the parties were not going to settle the final non-monetary issue and during a call on that date, Defendant's counsel requested to schedule depositions (Id., ¶ 18). Plaintiff opposed the request, citing scheduling conflicts and the impending pretrial deadlines (Id., ¶¶ 18-21). And so, here we are.

### Legal Standard

Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Federal Rule of Civil Procedure 16(b)(4) provides that, after a scheduling order is entered, it "may be modified only for good cause and with the judge's consent." See Abruscato v. GEICO Gen. Ins. Co., No. 3:13-CV-962-J-39JBT, 2014 WL 12616965, at *2 (M.D. Fla. May 30, 2014) (noting that in the Eleventh Circuit, "it is not entirely clear

- 4 -

whether just Rule 16, or also Rule 6, governs a motion to re-open discovery filed after discovery has closed," and applying both rules).

To show good cause under Rule 16(b), a party must establish that, despite his diligence, the deadline could not be met. Sosa v. Airport Sys., Inc., 133 F.3d 1417, 1419 (11th Cir.1998) (citing F<small>ED</small>. R. C<small>IV</small>. P. 16 Advisory Committee's Note). "Excusable neglect is an equitable determination that requires an examination into whether the moving party had a good reason for not responding timely and whether the opposing party would be prejudiced." Foudy v. Saint Lucie Cty. Sheriff's Office, 677 F. App'x 657, 660 (11th Cir. 2017), citing In re Worldwide Web Sys. Inc., 328 F.3d 1291, 1297 (11th Cir. 2003). In determining whether excusable neglect exists, courts utilize a four-factor balancing test: (1) "the danger of prejudice to the [opposing party]," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 395 (1993).

Discussion

Mr. Herbert argues that, at all times, Defendant acted in good faith and "Plaintiff should not be rewarded for reneging on its agreements and failing to comply with obligations of professionalism and courtesy." (Doc. 61 at 16). Mr. Crosbie counters that Defendant has not acted in good faith and has manufactured an alleged agreement to allow discovery to stay open indefinitely (Doc. 66-1, ¶22). Despite the unfortunate tone of the filings (which is unusual in the Court's experience with these lawyers), I find that certain undisputed facts are determinative here and that Defendant cannot show good cause or excusable neglect for failing to obtain the discovery within the allotted time.

*Good Cause*

The Case Management and Scheduling Order provides that: "The parties may not extend deadlines established in this Case Management and Scheduling Order without the approval of the Court." (Doc. 47 at 4); <u>see</u> <u>also</u> Doc. 47 at 3 ("The parties may agree by stipulation on other limits on discovery within the context of the limits and deadlines established by this Case Management and Scheduling Order, but the parties may not alter the terms of this Order without leave of Court."). It is undisputed that the discovery deadline expired well before the "tentative settlement" was reached, and before Mr. Schneider's deposition was noticed. While I acknowledge defense counsel's representation that the parties informally agreed to an extension, believed the case would settle, and did not wish to "burden" the Court, the fact remains that the parties had attempted to do what is expressly prohibited by the Scheduling Order. Having chosen to forego permission, counsel is now forced to seek forgiveness. On these facts, this is a hard sell.

I know both of the lawyers involved in this dispute and do not view the papers presented as evidence of bad faith on the part of either. Rather, the email exchanges reflect busy attorneys who assumed the case would settle and directed their efforts accordingly. Considering the expense of discovery, it is understandable that experienced counsel might bend to the business needs of clients and limit vigorous discovery if a settlement is in the offing. Usually, this strategy works; the case settles, costs are kept to a minimum, and everyone is happy. But, this approach is not without risk. "Inadvertence of counsel and an attempt to settle the dispute do not establish good cause for failing to comply with a court ordered deadline." <u>De Gazelle Grp., Inc. v. Tamaz Trading Establishment</u>, No. 6:13-cv-1430-Orl-31TBS, 2016 WL 7664220, at *2 (M.D. Fla. Dec. 22,

2016), report and recommendation adopted, 2017 WL 456970 (M.D. Fla. Jan. 6, 2017). When, as here, the settlement turns elusive, the consequences of foregoing discovery become real and immediate. While the situation is, indeed, unfortunate, it is not unforeseen. As such, I cannot find that the circumstances presented serve as good cause to excuse the lack of diligence in obtaining the deposition within the discovery period.

*Excusable Neglect*

Consideration of the four factors in the excusable neglect analysis reinforces my conclusion. Considering the current posture of the case, allowance of a deposition at this late date risks prejudice to Plaintiff, as counsel is focused on trial preparation. I also find it likely that a deposition at this late stage, even assuming it could be scheduled immediately, would have an impact on judicial proceedings, including the current deadlines. Plaintiff represents that the parties have already met to prepare the pretrial statement, due July 28th. Any new issues or matters raised by the deposition may create a need to amend the statement, leading to further delay. As discussed above, I find the reason for the delay was within the reasonable control of Defendant. Finally, while I do not find that defense counsel acted in bad faith, the consequences of failing to obtain discovery within the prescribed period, or to timely ask for an extension to complete discovery, are foreseeable to seasoned counsel and I imagine that the Court's ruling will not be unexpected. In sum, while I believe I understand the reasons for the choices made here, and I accept that good lawyers often make similar choices, defense counsel has provided an explanation, not an excuse. Accordingly, the motion is **denied.**

Both counsel agree that the parties were very close to a settlement of this matter. In view of the upcoming trial deadline, it is possible that they can yet obtain a settlement satisfactory to both, if given an opportunity to try again, with appropriate assistance. I

- 7 -

therefore **respectfully recommend** that the District Judge refer the case for a prompt settlement conference before a Magistrate Judge.

**DONE** and **ORDERED** in Orlando, Florida on July 17, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record

- 8 -